UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

CHUT VAN NGUYEN,

       Petitioner,

    v.

WARDEN,

       Respondent.

CAUSE NO. 3:26cv83 DRL-SJF

<u>OPINION AND ORDER</u>

Immigration detainee Chut Van Nguyen, representing himself, filed a petition for a writ of habeas corpus under 28 U.S.C. § 2241, arguing that he is being unlawfully detained in the custody of United States Immigration and Customs Enforcement (ICE). The respondents answered the petition, and Mr. Nguyen declined to file a reply. The court now grants the petition.

Mr. Nguyen is a Vietnamese citizen who came to the United States in 1986 at the age of 13 as a refugee. In 2009, Mr. Nguyen was convicted of aggravated assault, which led to him being detained in 2011 by United States Immigration and Customs Enforcement (ICE) while he faced removal proceedings under 8 U.S.C. § 1227(a)(2)(A)(iii) based on committing an aggravated felony.[1] He was ordered removed on August 24, 2011, and waived his right to appeal. Mr. Nguyen remained in immigration custody until November 29, 2011, when he was released on a supervision order.

---

[1] Other than the 2009 conviction, Mr. Ngyuen has a conviction for simple assault from 1991 and driving under the influence from 2003.

Mr. Nguyen remained so released until September 26, 2025, when he was arrested by ICE upon reporting to its field office for a scheduled check-in. The arrest report states that Mr. Nguyen was arrested because he was "subject to President Donald Trump's Executive Order, titled, 'Protecting the American People Against Invasion,' signed on January 20, 2025" [13-2 at 2]. According to the arrest narrative, at the time of the arrest, ICE was unable to obtain a copy of Mr. Nguyen's foreign identity or travel document, and Vietnam travel document applications were completed and placed in his file.

This habeas petition was filed in January 2026, just over three months after Mr. Nguyen was re-detained, arguing that his confinement was unreasonable because his removal is not reasonably foreseeable. He argues as much because there is no indication that travel documents to Vietnam are forthcoming. He says a 2008 repatriation agreement between the United States and Vietnam does not apply to individuals like him, who arrived in the United States before July 12, 1995. A later Memorandum of Understanding between Vietnam and the United States from 2020 allows for repatriation for certain individuals who arrived in the United States before 1995, but he asserts ICE has not shown that he is eligible for repatriation under that memorandum.

In answering the petition, the Warden (through federal counsel) asserts that Mr. Ngyuen was arrested to effectuate his removal to Vietnam. The Warden provides a declaration from an acting supervisory detention and deportation officer, who attested that "[o]n or about March 15, 2026, ICE [Enforcement and Removal Operations (ERO)] Chicago sent a formal request for travel documents to the ICE Removal Management Division for submission to the Government of Vietnam for issuance of travel documents" [13-2 at 2]. The

2

officer said that once travel documents are issued for Mr. Nguyen, ICE ERO will expeditiously coordinate removal. That was the status of the removal proceedings as of April 7, 2026, when the declaration was signed.

The Warden first argues that the court lacks subject matter jurisdiction to hear this petition, under both 8 U.S.C. § 1252(b)(9) and § 1252(g). The court has thoroughly considered its jurisdiction to review post-removal-order immigration detention. For the reasons previously stated, jurisdiction is secure insofar as this opinion goes. *See Liang v. English*, No. 3:25cv1052, 2026 WL 835853, 1 (N.D. Ind. Mar. 26, 2026) (Leichty, J.).

Turning to the merits, 8 U.S.C. § 1231(a)(6) gives the government the authority to detain a noncitizen while it effectuates a removal order. All noncitizens must be detained for a 90-day "removal period," which for Mr. Nguyen began upon the entry of his order of removal, since he waived his right to appeal. *See* 8 U.S.C. §§ 1231(a)(1), (a)(2)(A); 8 U.S.C. § 1101(a)(47); 8 C.F.R. § 1241.1(b). Beyond this 90-day period, certain classes of noncitizens may be detained even longer—what the statute calls inadmissible aliens (under 8 U.S.C. § 1182), those who have violated their nonimmigrant status conditions (under 8 U.S.C. § 1227(a)(1)(C)), those who have committed certain crimes, such as aggravated felonies, drug trafficking, or illegal firearm offenses (under 8 U.S.C. § 1227(a)(2)), those removable for national security or foreign relations reasons (under 8 U.S.C. § 1227(a)(4)), and those whom the Attorney General determines to be a risk to the community or unlikely to comply with the order of removal. These noncitizens "may be detained beyond the removal period"

3

or released on conditions of supervision. 8 U.S.C. § 1231(a)(6).[2] Given his criminal conviction, Mr. Nguyen's detention years ago was authorized by § 1231(a)(6). The Warden likewise relies on this same statute as the basis for his current detention.

"The distinction between an alien who has effected an entry into the United States and one who has never entered runs throughout immigration law," and "once an alien enters the country, the legal circumstance changes, for the Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001). To avoid a constitutional due process problem with § 1231(a)(6), and specific to a noncitizen who is present within this country and who is ordered removed, the law requires that his detention be limited to a reasonable time—namely "a period reasonably necessary to bring about that alien's removal from the United States." *Id.* at 689; *see also id.* at 682, 690-91.

Any § 1231(a)(6) detention of a present-but-ordered-removed noncitizen has this limitation, as it guards against the possibility that he might be indefinitely detained should his removal not be reasonably achievable. His indefinite detention would raise a serious constitutional problem. *Id.* at 690; *see also Clark v. Suarez Martinez*, 543 U.S. 371, 378 (2005) (same). In short, "once removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute." *Zadvydas*, 533 U.S. at 699.

The historic writ of habeas corpus grants a federal court the authority to review a noncitizen's detention and to decide independently whether "a set of particular

---

[2] For noncitizens who don't fall in these categories, if they are not removed during the 90-day removal period, they must be released, subject to conditions of supervision. 8 U.S.C. § 1231(a)(3).

circumstances amounts to detention within, or beyond, a period reasonably necessary to secure removal." *Id.*; *see also* 28 U.S.C. § 2241(c)(3). "In answering that basic question, the habeas court must ask whether detention exceeds a period reasonably necessary to secure removal" and "should measure reasonableness primarily in terms of the statute's basic purpose, namely assuring the alien's presence at the moment of removal." *Zadvydas*, 533 U.S. at 699. When removal proves reasonably foreseeable, the court can consider other factors (such as risk of crime) and often will deny habeas relief; whereas, when removal seems attenuated or unlikely, the court will order the individual's release, albeit conditioned on appropriate terms of supervision and the noncitizen's compliance with these terms. *See id.* at 699-700. After all, the choice isn't between detention and a noncitizen "living at large," but between detention and a noncitizen's supervised release on conditions that he cannot violate. *Id.* at 696.

The law materially defers these difficult judgments to the Executive Branch for a six-month period during which detention is considered presumptively reasonable to execute a removal order. *Id.* at 700-01. Even thereafter, the court listens with care when the government's "foreign policy judgments"—such as the status of repatriation negotiations—are implicated and otherwise affords "appropriate leeway when its judgments rest upon foreign policy expertise." *Id.* at 700. A noncitizen "may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future." *Id.* at 701. But "once [he] provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the government

must respond with evidence sufficient to rebut that showing." *Id.* (cleaned up); *see also Suarez Martinez*, 543 U.S. at 385-86.

The petitioner bears the initial burden, and the court sees no reason today to alter this. *See* 28 U.S.C. § 2241; *Zadvydas*, 533 U.S. at 700; *see also Skaftouros v. United States*, 667 F.3d 144, 158 (2d Cir. 2011); *Espinoza v. Sabol*, 558 F.3d 83, 89 (1st Cir. 2009). Nor must the court engage the same constitutional dilemma that § 1231(a)(6) could present merely because this is a second period of detention and not his first. *See Zadvydas*, 533 U.S. at 690. The court may consider not just what led to his original detention and release years ago, to the extent still pertinent, but also what circumstances newly exist today. Despite the old adage, past isn't always prologue in this context, and just because removal couldn't occur before doesn't mean it can't reasonably occur today under renewed efforts. At the same time, nothing in § 1231(a)(6) and nothing in *Zadvydas* suggests that the mere passage of time erases everything about the initial showing to make it all irrelevant. *See also Vu v. English*, No. 3:25cv999, 2026 WL 194171, 4-5 (N.D. Ind. Jan. 26, 2026) (Leichty, J.); *cf. Kem v. Noem*, No. 3:25cv997, 2026 WL 100566, 3-4 (N.D. Ind. Jan. 14, 2026) (Leichty, J.).[3] After all, as the period of confinement grows, what qualifies as a reasonably foreseeable future conversely must shrink. *Id.* at 701.

Mr. Nguyen was detained for about three months in 2011 until he was released on a supervision order in November 2011. Back then, ICE could not obtain a travel document for him to return to Vietnam. That period of detention, and its conclusion, complied with the

---

[3] No one should read either *Vu* or *Kem* as indicating that an original showing always remains gospel or shifting the burden.

standards from *Zadvydas*, and no one has challenged this. From November 2011 until September 2025, when he was detained again, neither side reports any progress toward his removal.

Even after Mr. Nguyen was re-detained on September 29, 2025, the government still didn't request travel documents over the following six months of detention. Instead, ICE ERO took nearly six months to get the travel document request ready for submission to the Government of Vietnam, and there is no estimate as to when the request will actually be submitted for consideration. The Warden does not explain why it took so long to prepare the request, when according to the arrest record, the Vietnam travel document application was completed at Mr. Nguyen's arrest.

Furthermore, the Warden does not estimate how long it might take to get a response from the Vietnamese government once the travel document request is submitted. Nor does the Warden respond to Mr. Nguyen's assertion that a 2008 repatriation agreement between the United States and Vietnam does not apply to individuals like him, who arrived in the United States before July 12, 1995, or address whether the 2020 Memorandum of Understanding would apply to him. Unlike other petitions, the government remained tight-lipped here about its success in repatriating Vietnamese citizens, *see, e.g., Huynh v. English*, 2026 U.S. Dist. LEXIS 86051, 10-11 (N.D. Ind. Apr. 17, 2026), and the court must rule based on the record before it. The preparation of a travel document request might have been enough earlier in the detention to justify Mr. Nguyen's continued detention. But, as *Zadvydas* instructs, "for detention to remain reasonable, as the period of prior postremoval [order] confinement grows, what counts as the 'reasonably foreseeable future' conversely

would have to shrink." *Zadvydas*, 533 U.S. at 701. The travel document request may ultimately bear fruit once it is submitted, but the court cannot find this to mean, given this record, that there is a reasonable likelihood of removal in the foreseeable future.

The only reasonable finding on this record is that immigration enforcement could not remove Mr. Nguyen to Vietnam in 2011, and that removal efforts reinitiated in September 2025 may or may not succeed on an unknown timeframe. Mr. Nguyen has met his burden. The Warden has not rebutted this showing. Accordingly, consistent with *Zadvydas*, 533 U.S. at 699-700, and because removal is not reasonably foreseeable, the court finds "continued detention unreasonable and no longer authorized by statute," albeit with his release occurring under supervision. Efforts to remove him may continue while he returns to supervision, on the same conditions as his last release.

Because the court finds that Mr. Nguyen's detention is not authorized by § 1231(a), the court declines to consider his alternative argument that he should be released because his order of supervision was improperly revoked.

For these reasons, the court:

(1) GRANTS the petition (ECF 8) to the extent that the court ORDERS the respondent to release Chut Van Nguyen on the same conditions of supervision that existed before his re-detention and to certify compliance with this order by filing a notice with the court by **May 5, 2026**, and

(2) DIRECTS the clerk to email a copy of this order to the Warden of the Miami Correctional Facility at the Indiana Department of Correction to secure Chut Van Nguyen's release.

(3) Any fee petition should be filed within the deadlines set by the Equal Access to Justice Act, 28 U.S.C. § 2412.

SO ORDERED.

May 4, 2026

*s/ Damon R. Leichty*
Judge, United States District Court